## Case No. 17,683.

### WILLETT et al. v. PHILLIPS.

[8 Ben. 459.] [1]

District Court, S. D. New York. June, 1876.

CHARTER PARTY AND BILL OF LADING — NONDELIVERY OF CARGO—PERILS OF THE SEA — ENTIRE CONTRACT.

1. A vessel was chartered for a lump sum to bring a cargo from Leghorn to Baltimore. The charter contained no exception as to perils of the seas. She was loaded at Leghorn and sailed: but, meeting heavy weather, she put back leaky to Leghorn, where parts of her cargo, which had been damaged, were taken out "by the authorities" and sold. The rest of it was carried forward by the vessel and delivered according to bills of lading, which the master had signed for it, as stipulated in the charter. The owner of the vessel filed a libel against the charterer to recover the charter money. *Held*, that the libel did not aver a loss of the cargo by perils of the seas; but, on the assumption that the nondelivery of the cargo which was not delivered, was caused by perils of the seas, the libellants were not entitled to recover, for the contract was an entire one, and, as the vessel did not fully perform it, she could not recover any part of the charter money, and the receipt of the cargo under the bills of lading by those to whom it was consigned was not a waiver by the charterer of the stipulation in the charter that the cargo should be wholly delivered before the charter money was payable.

2. The stipulation in the bills of lading as to perils of the seas could not affect the right of the charterer under the charter party.

This was a libel by [Lindley M. M. Willett and Edward J. Murphy] the owners of the bark Idolique to recover the sum of $3,000, being the amount of charter money agreed to be paid in a charter of the bark to the respondent [Jonas Phillips] for a voyage from Leghorn to Baltimore, which was executed by the master of the bark and the respondent, on the 23d of February, 1871. The libel alleged that the vessel was loaded at Leghorn by the respondent's agent with a cargo, for which the master signed bills of lading; that she sailed but met with heavy weather and sprung a leak, and parts of the cargo were wet and the vessel put back to Leghorn for repairs: that, while there, the authorities took from the vessel parts of the damaged cargo, without the consent of the master, and sold it: that the master applied to the respondent's agent for additional cargo, but the agent instructed the master to proceed on his voyage with the cargo that remained on board; and that the vessel performed the voyage to Baltimore and there delivered her cargo. The answer admitted the loading of the vessel but put in issue the other allegations of the libel, and denied that the vessel had performed the charter, and claimed that the libellants were not entitled to recover anything, by reason of the failure of the vessel to perform the charter, but alleged that the respondent had offered to pay such proportion of the charter mon-

1 [Reported by Robert D. Benedict, Esq., and Benj. Lincoln Benedict, Esq., and here reprinted by permission.]

ey as the cargo delivered bore to the cargo shipped.

Beebe, Wilcox & Hobbs, for libellants.
J. E. Parsons, for respondent.

BLATCHFORD, District Judge. The charter party in this case is very clear in its provisions. It charters the vessel to the respondent for an entire voyage from Leghorn to a port in the United States to be named by the charterer on signing bills of lading. The whole of the vessel is to be at the sole use of the respondent, and the owner agrees to take on board the cargo furnished. The respondent, in consideration of the agreements of the owner, contracts to furnish the vessel with a full cargo, and to pay for the charter or freight of the vessel $3,000 American gold dollars in full, "payable in cash on the correct delivery of the cargo." It is stipulated that the master is "to sign bills of lading as presented, without prejudice to this charter party." There is no exception as to perils of the seas or other misadventure.

The vessel performed the voyage under the charter, but delivered at the port of destination only a part of the cargo which the respondent put on board at Leghorn. The libellants contend that the vessel is entitled to the full freight of $3,000 because she performed the voyage, without reference to whether she did or did not deliver the whole of the cargo which was put on board of her, provided the cargo not delivered failed of delivery because of perils of the sea; and it is claimed that that has been shown.

The libel sets up that parts of the cargo which the vessel took on board at Leghorn were damaged by perils of the sea, after the vessel left Leghorn originally; that the vessel herself was damaged by such perils and put back to Leghorn for repairs; that there part of the damaged cargo was taken from the vessel, without the consent of the master, by "the authorities there," and was sold by them without his consent, and she was thus deprived thereof; that the master then applied to the agent of the respondent for additional cargo, but the agent instructed the master to proceed with what he had remaining; and that the vessel did so and delivered it and it was accepted.

The libel sets up no loss of cargo by perils of the sea. It sets up damage to cargo by perils of the sea and then avers substantially that some persons whom it calls "the authorities" took away part of the damaged cargo, and sold it without the consent of the master. It does not aver that the part so taken away and sold was so damaged that it could not have been carried forward, or that the sale was necessary or in accordance with the local law, or that the perils of the sea, or damage to the cargo by perils of the sea, had any thing to do with the sale. But, even on the assumption that perils of the seas caused the non-delivery of the cargo which was not delivered, the libellants are not entitled to recover. The contract was a unit. Being a contract for the conveyance of merchandise for an agreed price, it was entire and indivisible, and, as the vessel did not completely perform it, she is not entitled to any part of the $3,000. The freight was not wholly earned by a strict performance of the contract, and, therefore, no freight became due. There is nothing in the charter party on which the court can make any division or apportionment of the $3,000, because there is nothing in it from which it can be inferred that the parties intended there should be any such division or apportionment. Nor can the respondent be held to have waived the full performance of that part of the contract which provides that the cargo shall be wholly delivered before the charter money is payable, so as to be liable pro rata for the carriage of the merchandise actually delivered. The respondent did not accept or receive the cargo which was delivered. It was delivered, under the bills of lading, to those who received it, and no stipulation in the bills of lading, as to perils of the sea, could prejudice or affect the rights of the respondent under the charter party.

The allegations in the libel that the master applied to the agent of the respondent for additional cargo, and that the agent instructed the master to proceed with what he had remaining, are not sustained by the evidence. The respondent having once loaded the vessel was under no obligation to furnish her with more cargo.

The libel is dismissed, with costs.