BURN LINE, Limited, v. UNITED STATES & A. S. S. CO.

(Circuit Court of Appeals, Second Circuit. May 5, 1908.)

No. 259.

1. SHIPPING—FREIGHT—WHEN EARNED.

By the American law freight is due only if the goods are carried to destination, and, even if prepaid, may be recovered back on a failure to make delivery, unless expressly otherwise provided in the contract.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 44, Shipping, § 514.]

2. SAME—CHARTER HIRE—CONSTRUCTION OF CHARTER PARTY.

Respondent chartered a vessel from libelant to be used as one of its line steamers in making a voyage to Australia, the hire to be a lump sum payable in installments. The charter party provided that the owner should sign customary bills of lading and should hold the charterer indemnified against claims for loss or damage to cargo from any cause after delivered on board. It contained an exception of liability for losses through strandings, collisions, etc., "even when occasioned by negligence," and then provided as follows: "Owners agree to hold charterers indemnified in so far as the said negligence clause may be contrary to the laws of the United States, to accept the usual line form of bill of lading as customary in this trade, with the conditions therein, and the same to form a part of this agreement." Respondent collected freight in advance from shippers under bills of lading providing that it should be considered earned and was not recoverable, ship lost or not lost. On the voyage out the vessel and cargo were lost through stranding; a part only of the charter hire having been paid and the remainder not then due. *Held*, that the reference in the clause of the charter party quoted to the bills of lading was restricted to the negligence clause preceding, and that it did not incorporate into the charter party in favor of the owners the stipulation of the bills of lading that prepaid freight was to be considered earned, so as to impress such freight with a trust for payment of the charter hire.

Appeal from the District Court of the United States for the Southern District of New York.

For opinion of court below, see 150 Fed. 423.

Wing, Putnam & Burlingham, for appellant.
J. Parker Kirlin and Charles R. Hickox, for appellee.

Before LACOMBE, WARD, and NOYES, Circuit Judges.

WARD, Circuit Judge.    January 24, 1906, the United States & Australasia Steamship Company, operating a line of steamers between New York and Australia, chartered of the libelant the steamship Oakburn for a voyage to Australia and New Zealand. The charterer put up the ship on its line as a general ship, and gave to shippers its own line bills of lading, signed by it in the master's name by his authority. The charter party contained the following provisions, among others:

"(19) Steamer is to hoist the line flag of the charterers, which will be supplied by charterers, and funnel is to be painted as required by charterers."

"(16) The master or owner to attend daily, or when requested, at the charterers' or agents' office to sign bills of lading as presented and as customary, and at any rate of freight, without prejudice or reference to this charter; but charterers or their agents are authorized to sign bills of lading on behalf of the master or owners against written authority from the master, such authority to be binding upon the owners."

"(18) The owners agree to hold the charterers free of and indemnified against claim for loss or damage to cargo arising through the act, neglect, or default of the captain, officers, or crew, or from any cause whatever after the goods have been delivered to the steamer."

The above conditions show a very clear intention to make the steamer appear to shippers to be a line steamer, but as between the charterer and the owners to make the owners responsible for the transportation. The shippers, if advised of all the facts, could sue, for loss of or damage to cargo, either the owners or the charterer. The charterer collected from shippers prepaid freight to an amount in excess of the charter money, being all the freight due except about £135; the bills of lading containing the provision:

"Freight prepaid is considered earned at time of payment, and is not recoverable, ship lost or not lost."

The provisions of the charter party as to the charter money were as follows:

"(5) Freight to be a lump sum, £9,225 to be paid in New York as follows: One-third, less 3½ per cent. to cover interest and insurance, with demurrage, at loading port, if any, to be advanced 10 days after final departure of the steamer from New York, bills of lading as presented by charterers having been duly signed; one-third in London two months after sailing of steamer, without discount; and the balance after right and true delivery of the cargo in Australia and/or New Zealand, less 2½ per cent. commission. Any freight which may be payable by bills of lading at ports of discharge, not exceeding said balance, to be accepted by owners without recourse to charterers."

"(7) Charterers' responsibility under this charter to cease upon payment of the aforesaid advance freight."

Clause 7 is an illustration of the inartistic character of the charter party, because it is not to be taken literally, but only as a cesser of liability for so much of the third installment as is not covered by the freight due at destination, as may be seen from the account rendered by the charterer to the owners. It is the law of this country that freight, being compensation for the actual transportation of goods, is due only

if the goods are carried to destination. The charter freight in this case was a lump sum, and would only be earned upon delivery of cargo at the last port of discharge. The prepaid bill of lading freight, even if the goods were not delivered, could not be recovered by the shippers on account of the clause above mentioned.

April 18th the steamship sailed from New York. April 28th the charterer paid the first installment of charter money. May 21st, before arriving at the first port, the steamship ran on a reef on the west coast of Africa, and became, with her cargo, a total loss. The second installment of the charter money was not due until June 18th, and, the charterer having refused to pay the same, the owners brought this suit to recover it. If there was nothing more in the documents than as above recited, it is quite clear that the owners could not recover this second installment. Watson v. Duykinck, 3 Johns. (N. Y.) 335; The Kimball, 3 Wall. 37, 45, 18 L. Ed. 50; De Sola v. Pomares (D. C.) 119 Fed. 373. Indeed, they would have to repay to the charterer the first installment, but for the fact which the charterer admits would be a defense, viz., that they had paid for its insurance. This is in accordance with some of the reasoning in the opinions in The Barnstable, 94 Fed. 213, 36 C. C. A. 199; Id., 181 U. S. 464, 21 Sup. Ct. 684, 45 L. Ed. 954.

Of course, the result would then be that the charterer, by virtue of having collected prepaid freight, would be actually better off by the loss of the ship than if she had arrived and delivered her cargo, because it would be obliged to pay the owners only one-third of the charter money, whereas it had collected from the shippers more than the whole of the charter money. But there would be nothing inequitable in this, because it would be profiting by the better bargain it had made with the shippers in the bills of lading than the owners had made with it in the charter party. Willett v. Phillips, 8 Ben. 459, Fed. Cas. No. 17,683; Carver on Carriage by Sea, §§ 151 to 161. But the charter party contained a negligence clause which the court below (150 Fed. 423) held had the effect of incorporating the whole bill of lading into the charter party, so that the owners got the benefit of the freight prepaid by the shippers to the charterer. It is as follows:

"(21) * * * Strandings, collisions, and all losses and damages caused thereby, are also excepted, even when occasioned by negligence, default, or error in judgment of the pilot, master, mariners, or other servants of the ship-owners, * * * and all the above exceptions are conditional on the vessel being seaworthy when she sails on the voyage. * * * Owners agree to hold charterers indemnified in so far as the said negligence clause may be contrary to the laws of the United States, and to accept the usual line form bill of lading as customary in this trade, with the conditions therein, and the same to form part of this agreement."

The language as to indemnity to the charterer amounts to saying that the owner will not enforce the negligence clause of the charter so far as it may be contrary to the law of the United States, which goes without saying. If they could not, they would not enforce it.

But the provision evidently contemplated something more than an agreement to take the line bills of lading, because the owners had already agreed to this and to become responsible for the transportation in clauses 16 and 18. We think it contemplated a difference of lia-

bility (although none actually existed) under the laws of the United States for negligence between the provisions of the bills of lading and the provisions of the charter party. If the shippers were to sue the owners and recover on the bills of lading, the owners agreed that they would not avail themselves of the exceptions in the negligence clause of the charter party as against the charterer; e. g., if it was good, the steamship not being as to the charterer a common carrier. The Fri, 154 Fed. 333, 83 C. C. A. 205. On the contrary, if the shippers were to sue the charterers on the bills of lading, and recover, the owners agreed to indemnify the charterers, notwithstanding the negligence clause of the charter party.

Whether this is the right explanation or not, it seems to us clear that the reference to the line bills of lading in clause 21 is restricted to the negligence clause, and does not incorporate into the charter party in favor of the owners the stipulation that prepaid freight is to be considered earned and not recoverable, or impress the prepaid freight with a trust in favor of the owners. The second installment of charter money was not due and had not been paid at the time the vessel was lost, so that it would not be covered by the clause, and it was not impressed with a trust in favor of the owners, because they had nothing whatever to do with it. If we have correctly construed the contract, there is nothing inequitable in the charterer retaining the bill of lading freight prepaid by the shippers, even if the owners, for want of a similar clause in the charter party, are unable to recover from the charterer.

This conclusion renders it unnecessary to consider whether the stranding was due to negligence or not.

The decree of the court belowed is reversed, with costs.