## NATIONAL STEAM NAV. CO., LIMITED, OF GREECE, v. INTERNATIONAL PAPER CO.

(Circuit Court of Appeals, Second Circuit.   March 13, 1917.)

### No. 204.

SHIPPING ☞145—FREIGHT—WHEN EARNED—REQUIREMENT OF PREPAYMENT—"DUE IN FULL."

Respondent shipped goods on libelant's steamer under the terms of the carrier's bills of lading, which were well known to it, and which provided that "it is hereby expressly agreed that the freight, * * * having been prepaid by the shipper, became wholly due, and belonged absolutely to the steamer, without recovery, on receipt of the goods into the custody of said steamer, ship lost or not lost"; also that "freight to be paid, if payable by shippers, is due in full on signing of bills of lading"; also that "the freight prepaid will not be returned, goods lost or not lost." The steamer sailed on the 16th of the month, the bill of lading was signed by the carrier, and on the 18th respondent was requested to pay the freight, which it promised to do. It was afterward learned that on the 17th fire had broken out on the steamer, which later caused the loss of both ship and cargo. *Held*, that the intention that the freight should be paid, goods lost or not lost, was prominent throughout the bill of lading, that in the provision that the freight should be "due in full on signing the bill of lading" the words "due in full" did not mean that the obligation to pay then first arose, and that the signing was a condition precedent to libelant's right, but had reference to a previously existing obligation, which then became payable, and that libelant was entitled to recover the freight, whether or not the bill of lading was signed before the fire started.

[Ed. Note.—For other cases, see Shipping, Cent. Dig. §§ 226, 502–505.]

Appeal from the District Court of the United States, for the Southern District of New York.

Suit in admiralty by the National Steam Navigation Company, Limited, of Greece, against the International Paper Company. Decree for libelant, and respondent appeals. Affirmed.

Harrington, Bigham & Englar and Oscar R. Houston, all of New York City, for appellant.

Kirlin, Woolsey & Hickox, of New York City (John M. Woolsey, of New York City, of counsel), for appellee.

Before COXE, WARD, and ROGERS, Circuit Judges.

WARD, Circuit Judge. August 30, 1915, the Paper Company entered into an agreement with the Steamship Company to ship paper on its steamer Athenai, to be carried to Piræus under the terms of the carrier's bill of lading, which were well known to the shipper, and to prepay the freight in New York. The carrier furnished its bills of lading to the shipper, which it filled out and delivered to the carrier September 15th for signature. September 16th the steamer sailed. September 18th the carrier called up the shipper on the telephone, requesting it to take up the bills of lading and pay the freight, which it promised to do. It was subsequently learned that on the 17th, when one day out, fire was discovered in two of the holds and that on September 19th, the ship and cargo were abandoned and became a total loss.

The bills of lading contained the following provisions:

"It is hereby expressly agreed that the freight and primage (as per margin), having been prepaid by the shippers, became wholly due, and belonged absolutely to the steamer, without recovery, upon the receipt of the goods into the custody of said steamer, ship lost or not lost.

"10. * * * Freight to be paid, if payable by shippers, is due in full on signing of the bills of lading; if payable by consignees, on arrival of the goods at the port of discharge; settlement in either case to be made in exchange for bill of lading or delivery order.

"11. Also that the freight prepaid will not be returned, goods lost or not lost."

The shippers having refused to pay the freight, this libel was filed to recover it, and Judge Hough entered a decree in favor of the libelant for the full amount.

The English cases on the subject of prepaid freight do not express the law of this country. Here prepaid freight, in the absence of an agreement to the contrary, must be returned to the shipper, if the goods do not arrive, and in such case the shipowner cannot recover it of the shipper, if not actually prepaid. For this we have the high authority of Chancellor Kent in Watson v. Duykinck, 3 Johns. (N. Y.) 335 (1808); Griggs v. Austin, 3 Pick. (Mass.) 20, 15 Am. Dec. 175 (1825); 11,185 (1837); Phelps v. Williamson, 5 Sandf. (N. Y.) 578 (1852); Benner v. Insurance Co., 6 Allen (Mass.) 222 (1863); of the Supreme Court in The Kimball, 3 Wall. 37, 18 L. Ed. 50 (1865); and finally of our own decision in Burn Line, Ltd., v. Steamship Co., 162 Fed. 298, 89 C. C. A. 278. To the same effect is the law of the Continent.

The law of England, on the contrary, is that freight prepaid by agreement cannot be recovered by the shipper, and can be recovered by the shipowner in case of the loss of the goods. In Byrne v. Schiller, 1 Aspinall, Mar. Law Cases, N. S. 111, the Court of Exchequer Chamber, while admitting that the law of England on this point was unsatisfactory in principle and unsupported by authority in other countries, held it to be too strongly established to be departed from.

The shippers cite the case of Smith v. Pyman, 7 Aspinall, Mar. Law Cases, N. S. 7, which was an exception to the English rule, because the language of the charter was that the freight was to be prepaid "if required." There was to be a deduction 'for insurance. The Court of Appeal held that this was an option to the shipowner, which he could not exercise after the ship was lost, because then no freight was recoverable at all, and the shipper could not insure it. In the present case there was no option. The freight was due absolutely, either when the goods were on board or when the bill of lading was signed.

The carrier relies on Oriental Steamship Co. v. Tylor, Id. 377, in which one-third of the freight was payable on signing the bill of lading, and the ship sank before the bill was signed. The Court of Appeal held that the delay in signing was due to the fault of the charterer in not presenting the bill seasonably, as he was under an implied obligation to do, and that therefore he was liable to the carrier, not for freight, but in damages measured by the advance freight. The signing of the bill of lading was treated as a condition precedent to the right to freight.

In the present case it is said that, freight not being due until the bills of lading were signed, none can be collected, in the absence of proof

that they were signed before the fire broke out which caused their loss. The obligation of the ship to carry, and of the shipper to pay for the carriage, accrues when the goods are delivered to the ship. The special terms as to how much and how and when freight is to be paid are fixed by the bill of lading. It is a matter of construction in each case.

In this particular bill the intention that freight is payable, goods lost or not lost, is prominent throughout. One clause provides that, when paid, it is paid as "wholly due" when the goods went aboard. The important clause, however, is the one making freight to be prepaid by the shipper "due in full on signing the bill of lading." Does the word "due" mean that the obligation to pay then first arises, and that signing is a condition precedent of the carrier's right, or does it mean that the freight previously due is then payable? The carrier makes the former contention. The parties cannot have intended to make the obligation to pay depend upon the mere act of signing. It must then and there be communicated to the shipper. If "due" is to be understood as being then first due, the bill of lading must be tendered to the shipper when it is signed. It cannot be so tendered after the goods are lost because then no freight is payable. Upon this construction it follows that in this case no freight was due, because when the bill of lading was tendered the goods were involved in the fire which caused their total destruction, and the libel should have been dismissed.

If, on the other hand, "due in full" means payable in full of a previously existing obligation, then it makes no difference whether the bill of lading is signed before or after the goods are lost. This is consistent with the primary intention, that runs through the whole bill of lading, that all risk of loss of the ship and goods is on the shipper, and with the clause that prepaid freight was wholly due, and belonged to the steamer upon receipt of the goods, ship lost or not lost. We so construe this bill of lading.

Of course no action to recover the freight would be maintainable, without proof that the bills of lading had been signed and tendered to the shipper. Ocean Steamship Co., Ltd., v. United States Steel Products Co., 239 Fed. 823, —— C. C. A. ——. But this had been done, as pointed out, September 18th, before suit was begun.

Decree affirmed, with interest and costs.