### THE CATALUNA.
### THE ARAGON.

(District Court, S. D. New York. March 26, 1918.)

1. SHIPPING ⬤⤳175—CHARTERER BREACHED CONTRACT BY FAILURE TO PROCURE CLEARANCE, ETC., AFTER LOADING.

Where charter party allowed 12 lay days for loading and unloading, and provided for payment of demurrage in event of additional delay, the charterer, which failed to obtain clearance for the vessel after it was loaded, etc., must be deemed to have breached its contract, and is liable in personam for damages to the owner of the vessel, which, after a long delay, unloaded the cargo at the charterer's risk.

2. SHIPPING ⬤⤳152—FREIGHT PAID IN ADVANCE MAY BE RECOVERED BACK WHERE CARGO IS NOT DELIVERED.

The American doctrine is that freight paid in advance can be recovered back if the ship fails to deliver cargo at destination, unless there is a special stipulation that freight shall not be repaid.

3. SHIPPING ⬤⤳49(5)—CARGO UNLOADED FOR CHARTERER'S FAILURE TO OBTAIN CLEARANCE NOT SUBJECT TO OWNER'S CLAIMS FOR CHARTERER'S BREACH OF CONTRACT.

Where the charterer of a vessel failed to obtain clearance, and the owner finally unloaded the cargo, held that, while the charterer was

⬤⤳For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

liable in personam for breach of the charter party, which fixed the time for loading, etc., yet under the American doctrine, that freight paid in advance may be recovered back if cargo is not delivered, the owner had no lien on the cargo unloaded, notwithstanding charter party provided for payment of freight in advance, for no freight in the proper acceptance of the term was earned.

In Admiralty. Libel by the Compania Trasmediterranea, as owner of the steamship Cataluna against 6,387 barrels of petroleum and the Societe Espagnole d'Achate & d'Affretements, together with a libel by the Compania Trasmediterranea, as owner of the steamship Aragon, against 7,072 barrels of petroleum and the Societe Espagnole, etc. On exceptions to libels. Exceptions overruled as to libels in personam, and sustained as to libels in rem.

Kirlin, Woolsey & Hickox, of New York City (John M. Woolsey, of New York City, of counsel), for exceptions.

Burlingham, Veeder, Masten & Fearey, of New York City (Roscoe H. Hupper, of New York City, of counsel), opposed.

MAYER, District Judge. Exceptions have been filed to libels brought by the owner of two Spanish steamships against their respective cargoes of petroleum and the charterer. The libel on behalf of the Aragon is brought to recover (1) freight, (2) demurrage, and (3) extra expenses, aggregating $174,864; and the libel on behalf of the Cataluna is brought to recover (1) freight, (2) demurrage, and (3) expenses of lighters, etc., aggregating $156,644. The charters on which the libels are founded are in the same terms, and the libels themselves are similar in form. It will suffice, therefore, for both cases, to refer to the Cataluna libel.

[1] The Cataluna was chartered at Barcelona, Spain, to proceed to New York and load a complete cargo of crude petroleum in barrels to be provided by respondent, and with said cargo to proceed to certain Spanish ports. The charter party provided with regard to freight and demurrage as follows:

"(4) Twelve lay days are conceded for the loading and unloading, commencing to count these from the moment of the steamer's arrival at the port, whether the pier is ready or not, in spite of the custom of the port, always that the ship is ready to receive or discharge its cargo. If the pier indicated by the charterers cannot be used immediately, these days will begin to be counted immediately on receiving written notice that the steamer has arrived in port.

"(5) For every day's delay occasioned through fault of the charterers, or their agents, the charterers will have to pay 5,000 (five thousand) pesetas per day, payable in Barcelona."

"(8) The charterers must pay the total sum of the freight in Barcelona on receipt of telegraphic advice that the cargo has been loaded and the B/L's signed. The freight to be 60 (sixty) pesetas per barrel shipped and further amount of delay, should there have been any in New York."

It is alleged that under the charter party it was the duty of respondent to furnish the Cataluna with a lawful cargo, and that respondent was bound to secure all such licenses and permits as should be required in respect of the cargo, and to furnish all such papers and documents

concerning cargo as should be necessary to enable the Cataluna to clear and sail from the port of New York with her cargo.

The Cataluna arrived at the port of New York on or about August 27, 1917, was duly tendered to respondent, and in due course began loading her cargo of 6,387 barrels of crude petroleum, which loading was completed September 17, 1917; lay days allowed under the charter parties having expired on September 12, 1917. When the loading was completed, the Cataluna was ready to proceed on her voyage from New York with the petroleum cargo, and libelant demanded from respondent that bills of lading be presented for signature, and that respondent should secure and present such other papers and documents as were necessary to enable the Cataluna to clear, including an export license for the cargo. Respondent wholly failed and neglected to present bills of lading, and did not provide the necessary export license and such other papers as were requisite to enable the vessel to clear, and by reason thereof the Cataluna was prevented from proceeding on her voyage, and was detained at New York from September 12, 1917, to December 5, 1917. On the latter date libelant caused the cargo of crude petroleum to be discharged from the Cataluna onto lighters, there to be held at the risk and expense of respondent. The libel then alleges that by reason of the foregoing matters libelant became entitled to collect from respondent the freight provided by the charter party to be paid and demurrage money, and further charges and expenses for lighters, etc. The libelant asked that process in rem issue against the 6,387 barrels of crude petroleum, and that process in personam, with clause of foreign attachment, issue against respondent.

From the foregoing it is plain that there was a breach of the charter party. The Cataluna was not called upon to lie idle indefinitely, and the fact that freight and demurrage were to be paid for at Barcelona does not transmute a breach into something else, nor prevent libelant from recovering because by respondent's conduct libelant was prevented from transporting the freight. It must be remembered that the charter was a voyage charter, and, so far as appears from the face of the libel, libelant was always ready to perform its agreement; but respondent, in failing to obtain the necessary clearance papers and detaining the vessel for an unreasonable time, breached its contract. I am of opinion, therefore, that the libel, so far as it sets forth an action in personam, is good, and that the exceptions in that respect must be overruled.

[2, 3] The libel in personam proceeds in effect, upon the theory of damages for breach of the charter party; but, while the libel is good in personam, it fails in rem. The American doctrine is that freight paid in advance can be recovered back in the event that the ship fails to deliver the cargo at destination, unless there is a special stipulation that the freight shall not be repaid. Nat. Steam Nav. Co., Ltd., of Greece v. International Paper Co., 241 Fed. 861, 154 C. C. A. 563, expresses the views of our Circuit Court of Appeals, and that opinion clearly points out the difference between the law of England and our law upon the subject of prepaid freight and reference is made to well known leading cases.

Where freight is not prepaid, there can be no doubt that there cannot be a maritime lien, unless the freight is earned; that is to say, transported. Where freight is prepaid, but not transported, it seems to me the same principle must apply, although perhaps there is no case which clearly and directly disposes of the point. Freight under our law is a payment for the delivery of goods to destination, and whether prepaid or not is earned only by such delivery in the absence of some special arrangement to the contrary. No transportation having taken place, and no freight having been earned, there is no foundation for a maritime lien, and thus for an action in rem. As demurrage is extended freight, there is no action in rem for demurrage. The exceptions, so far as they are directed to the action in rem, are sustained.

Settle order on notice.