## THE ESROM.

(District Court, E. D. New York. November 13, 1919.)

1. SHIPPING ⬡133—LIEN ON VESSEL FOR CARE AND TRANSPORTATION; SIGNING OF BILL OF LADING.

Notwithstanding charter of vessel provided that captain should sign bills of lading, and they were signed only by the charterer, by receipt of the goods by the vessel she was bound, and lien on her for care and transportation then attached.

2. SHIPPING ⬡133—ATTACHING OF LIEN ON VESSEL FOR CARE AND TRANSPORTATION; BREAKING GROUND FOR VOYAGE.

Attachment of lien on vessel for care and transportation is not deferred till she break ground for the voyage, but accrues with obligation to carry when goods are laden on board.

3. SHIPPING ⬡125—INJURY TO CARGO DURING DELAY IN SAILING; VESSEL'S LIABILITY.

The master of the ship, knowing of the perishable character of dried fruits received on board for transportation, and the consequences thereto of failure to sail in a reasonable time, there was a breach of duty for which the boat should respond, no attempt having been made by the owner to notify shipper or to reship the goods, though sailing of ship was delayed two months through dispute between owner and charterer.

4. SHIPPING ⬡132(3)—INJURY TO CARGO DURING DELAY IN SAILING; PROOF AS TO VOYAGE.

To establish liability of vessel for deterioration of cargo of perishable goods during unreasonable delay in sailing, it is not necessary for libelant to show that, had she sailed seasonably, the voyage would have been completed in such time and under such conditions as would cause no deterioration.

In Admiralty. Libel by the J. K. Armsby Company against the steamship Esrom, her engines, etc.; the Aktieselskabet Dampskibet Island, claimant. Interlocutory decree for libelant.

Harrington, Bigham & Englar and Curtis, Mallet-Prevost & Colt, all of New York City, for libelant.

Burlingham, Montgomery & Beecher, of New York City, for claimant.

GARVIN, District Judge. A libel was filed against the Danish steamship Esrom by the J. K. Armsby Company, claiming damages by reason of a failure to convey to Copenhagen 5,100 boxes of prunes, which were placed on board on or about August 11, 1915, and which deteriorated in value thereafter. The Esrom did not sail until October 9, 1915, the prunes having been previously removed in a damaged condition, due to decay from heat, while the boat was lying at the pier.

An answer was interposed by the owner and claimant of the vessel, Aktieselskabet Dampskibet Island, setting forth that, at the time the goods were loaded, the Esrom was under charter to the Interocean Transportation Company of America, Incorporated, which issued the bill of lading, and that the contract of affreightment which had been made with the Interocean Company gave that company no authority

to enter into any contracts of affreightment or to issue bills of lading in behalf of the claimant or the Esrom.

The charter to the Interocean Company provided by article 1 that the Esrom load at New York—

"a full and complete cargo of wheat and/or maize and/or other lawful merchandise, and being so loaded shall therewith proceed, as ordered when signing bills of lading to Gothenburg and Copenhagen, * * *

"Charterers shall pay the vessel freight as follows: 57/ (fifty-seven shillings B. S.) per ton on her actual dead weight carrying capacity of cargo. Freight prepaid in New York before steamer leaves New York, less 2½ per cent. discount."

Article 13 provided:

"The captain shall sign bills of lading or master's receipts as and when presented, without prejudice or reference to this charter party, and any difference between the amount of freight by the bills of lading and this charter party to be settled at port of loading before sailing, as customary."

The libelant paid the freight, $1,685.04, in advance, direct to the Interocean Company, which issued its own bill of lading, signed "Interocean Transportation Co. of America, Inc., by Sam'l G. Jackson." The owner had a dispute with the charterer over the payment of freight under the charter party, as a result of which the ship did not sail until October 9th.

[1] Without disputing that the general rule that the owner of the cargo has a valid lien upon the vessel for the care, transportation, and delivery thereof is well settled (The Maggie Hammond, 9 Wall. 435, 19 L. Ed. 772), the claimant insists that this rule does not apply for two reasons:

First, that there is no obligation on the part of the vessel to transport the cargo, if the bill of lading is signed by the charterer and not by the master, until the charterer has performed his obligations, which by the charter are conditions precedent to the sailing; and

Second, that there is no liability on the part of the vessel to the cargo to proceed with it under the bill of lading here involved, until she breaks ground for her voyage.

Voluminous and able briefs have been submitted, and the industry of counsel has brought to the attention of the court many authorities, the effect of most of which it is unnecessary to discuss, because they are clearly distinguishable from the case at bar.

The real objection advanced by the claimant is that there can be no lien because the master did not sign the bill of lading. However, the goods were received by the vessel, and I am of the opinion that by their receipt the boat was bound. The fact that her owners had chartered her should be no objection to this, for the only object of the charter was to put the charterer in a position to give shippers the right to place freight aboard for shipment, and the charter itself provided that the captain should sign bills of lading.

[2] It does not seem that, under the authorities, it can be successfully claimed that the lien does not attach until the vessel breaks ground for the voyage. I think a correct statement of the law is to

be found in the opinion in the case of Blowers v. One Wire Rope Cable (D. C.) 19 Fed. 444 at page 446, by Judge Brown:

"I understand the law, as generally administered, to be that the lien of the vessel upon the goods, and of the goods upon the vessel, attaches from the moment the goods are laden on board, and not from the time only when the ship breaks ground. The Bird of Paradise, 5 Wall. 545, 562, 563 [18 L. Ed. 662]; Bulkley v. Naumkeag, etc., Co., 24 How. 386, 393 [16 L. Ed. 599]; The Yankee Blade, 19 How. 82 [15 L. Ed. 554]; 1 Pars. Shipp. & Adm. 174, and notes; The Hermitage, 4 Blatchf. 474 [Fed. Cas. No. 6,410]; The Eddy, 5 Wall. 481, 494 [18 L. Ed. 486]."

See, also, The Hiram (D. C.) 101 Fed, 138, 140.

The Circuit Court of Appeals for this circuit has stated in the comparatively recent case of National Steam Navigation Co., Ltd., of Greece v. International Paper Co., 241 Fed. 861, 154 C. C. A. 563:

"The obligation of the ship to carry, and of the shipper to pay for the carriage, accrues when the goods are delivered to the ship."

[3] The claimant suggests that the master of the Esrom was not chargeable with notice of the perishable nature of libelant's shipment. The testimony of the witness Coxon, which was not contradicted, is in part as follows:

"Q. Will you state what, if any, precautions there are which are customarily taken on steam vessels with respect to dried fruit cargoes? A. Well, it is customary to stow them in the coolest place in the ship, where they get the most ventilation, thorough ventilation."

It is clear from this and other testimony that the master or his representative, who received the goods on board, must have known of their nature, and of the consequences in the event of the failure of the vessel to sail within a reasonable time. Under such circumstances, when no attempt was made by the owner to notify the shipper or to reship the goods, it seems to me that there was a clear failure of duty, and that for the damage the boat should respond. The Gordon Campbell (D. C.) 141 Fed. 435.

Even if the master was not charged with notice of the contents, I am satisfied from the testimony of Capt. Coxon that, if the vessel had sailed with reasonable promptness, no damage would have resulted. The cause of action was therefore complete before there could have been any delay to the ship in reaching her destination after her voyage was begun.

[4] The claimant contends that the libelant must show that the voyage would have been completed within such a time and under such conditions as would cause no deterioration to the cargo, but with this I do not agree. It seems to me that that would be, at best, a matter of conjecture.

It follows, therefore, that the libelant will have an interlocutory decree.