FREDERICK H. LEGGETT & CO. v. 500 CASES OF TOMATOES et al.

(Circuit Court of Appeals, Second Circuit. November 1, 1926.)

No. 28.

1. Shipping ⚖➣154, 201—Lien for freight or general average is maritime, governed by equitable principles, and with reference to usages and customs of trade.

In United States, lien for freight or general average is maritime, and not governed by strict and technical common-law rules, but by equitable principles, and with reference to usages and customs of trade.

2. Shipping ⚖➣201—Shipowner cannot refuse to deliver goods to cargo owner without cash payment of estimated amount of general average due, if reasonable security is tendered.

If cargo owner's contributive share of general average is neither paid nor secured, shipowner's lien permits retention of possession; but shipowner cannot refuse to deliver without cash payment of estimated amount of general average due, where reasonable security is tendered.

3. Shipping ⚖➣201—Bill of lading provision, in which consignees agree to deposit with shipowner estimated amount of general average requested by shipowner, pending adjustment, held unreasonable.

Provision of bill of lading that consignees agree to deposit with shipowner amounts requested by shipowner as guaranty for contribution, which they may be called to pay in adjustment of general average to be made in Italy at shipowner's request, held unreasonable, because it attempts to bind shippers to any amount shipowner chooses to exact, and puts their money at hazard of shipowner's solvency.

Appeal from the District Court of the United States for the Southern District of New York.

Possessory libel by Frederick H. Leggett & Company against 500 cases of tomatoes; the Italia-American Shipping Corporation, claimant. Decree for libelant, and claimant appeals. Affirmed.

This is a possessory libel brought by libelant to recover certain cases of tomatoes belonging to it and in the possession of the claimant.

The tomatoes had been carried from Naples to New York on one of the claimant's steamers, which steamer during the course of the voyage had incurred charges which, for the purpose of this litigation, may be deemed to have constituted general average.

When the steamer arrived at New York libelant demanded its merchandise, and claimant refused to deliver it, except upon payment to it of the estimated amount of general average due in respect of libelant's tomatoes, viz. $40.

Libelant paid or tendered all freight and other charges, except this estimate for general average. As to that $40, it offered to file as security a surety company bond or to deposit the sum in cash with any reputable bank in the city of New York as trustee, there to be held pending the adjustment of the general average.

Claimant refused to deliver the tomatoes, except upon payment to or deposit with it of said $40, and likewise refused the offer of a bond or of deposit in a chartered bank.

The final decree awarded the merchandise to libelant, and claimant brought this appeal.

Loomis & Ruebush, of New York City (Homer L. Loomis, of New York City, of counsel), for appellant.

Bigham, Englar & Jones, of New York City (T. Catesby Jones, of New York City, of counsel), for appellee.

Before HOUGH, MANTON, and HAND, Circuit Judges.

HOUGH, Circuit Judge (after stating the facts as above). The single question presented is whether a shipowner, on the happening of a general average loss, may insist as a prerequisite to delivery of cargo on the payment to him of a reasonable estimate of the cargo owner's average share. This right, if it exists, implies the further right to reject any and every other form of security tendered by the cargo owner.

The argument is based upon the assumption that the shipowner's maritime lien for general average payable by the cargo is in its nature *possessory*, and from that word is drawn the conclusion that nothing but cash in hand can deprive the shipowner of possession. The legal origin of the American maritime lien for freight (which includes that for general average) is sufficiently set forth in Wellman v. Morse, 76 F. 573, 22 C. C. A. 318, and The Saturnus, 250 F. 407 at page 409, 162 C. C. A. 477, 3 A. L. R. 1187. It is enough for present purposes that the lien is maritime, is enforceable in the admiralty, and is therefore subject to the plastic and equitable treatment of admiralty law.

[1] It may be admitted that we have derived the lien, not from the privilege of continental law, but the possessory lien of the common law. But that does not change the modern truth that in the United States the lien for freight and/or general average is maritime, and therefore "not governed by the strict and technical rules of the common law," but to be dealt with "upon equitable principles and with reference to the usages and customs of trade." Bags of Linseed, 1 Black, 108 at page 114 (17 L. Ed. 35).

Therefore the question here is: What equitable considerations arise, and what are the usages and customs of trade in respect of securing liens for general average? Until an adjustment is made, the lien under consideration is inchoate; it attaches, but its amount cannot be ascertained until adjusted. The Alliance (D. C.) 64 F. 871, affirmed 79 F. 989, 25 C. C. A. 292.

The practical difficulties arising in at-tempting enforcement of such a demand as this shipowner makes were pointed out in 1896 by Putnam, J., in Wellman v. Morse, supra. That very experienced admiralty judge there said: "The theoretical remedy of a cash settlement is so impracticable that Lowndes states in substance that something else is imperative"—and proceeded to agree with Mr. Lowndes' dictum. We likewise agree. Since 1896, new editions of substantially all the text-books referred to in the Wellman Case have appeared, and all of them set forth in detail the usage and the necessity for bond or deposit, and none recognizes a right in the shipowner to demand payment to him of an estimated amount (however reasonable) in advance.

We think American usage and law are sufficiently set forth in Mr. Coe's treatise on the Law and Practice of General Average in the United States. He states (page 77):

"According to invariable custom in the United States, before the delivery of the merchandise, the consignees sign an average bond or agreement and in addition furnish a satisfactory guaranty. This guaranty is unlimited, and is an absolute obligation to pay any charges for which the particular shipment is liable. It is customary to accept the guaranty of underwriters legally doing business in the United States, or the guaranty of bankers or other satisfactory sureties. When such guaranties are not available, a deposit is made with the trustees named in the average bond, who are usually the average adjusters. * * * The deposits taken are placed in trust accounts, and the interest earned on them is credited in the average statement."

See, on this general subject, Scrutton on Charter Parties (10th Ed.) p. 310; Carver (7th Ed.) p. 606; Gourlie, General Average, pp. 428 and 430; Maclachlan (6th Ed.) p. 560; Abbott's Law of Merchant Ships (13th Ed.) p. 664.

[2] Undoubtedly, if the contributive share of a given cargo owner is neither paid nor secured, the shipowner's lien permits a retention of possession. But never, we think, has' the shipowner's right of possession been stated more broadly than as one authorizing retention until the contributive share "is either paid *or* satisfactorily secured." United States v. Wilder, 3 Sumn. 308, Fed. Cas. No. 16,694, per Story, J.; Simons v. White, 3 B. & C., 805.

Appellant greatly relies on Huth v. Lamport, 16 Q. B. D. 735, affirming 16 Q. B. D. 443. That case held no more than that the conditions of deposit and the form of the bond there required of the consignees were

unreasonable and could not be insisted upon, and Lindley, L. J., pointed out that it was in that case "unnecessary to say whether he (the master) can refuse (to deliver) if reasonable security is offered."

That question is presented here and in the admiralty, and we, treating the maritime lien involved in accordance with the usages and customs of trade, answer the question in the negative. It is admitted that the security here tendered (and actually given) is reasonable. Therefore the refusal of the shipowner to deliver the cargo was unreasonable, and this possessory action lies.

[3] Thus far we have considered merely the rights growing out of the maritime lien, but appellant by its assignments of error also relies upon the fact that the paragraph in the bill of lading under which these goods were carried contains a clause that, in respect of general average, "all consignees agree to deposit with the [shipowner] the amount requested by [the shipowner] as a guaranty for the contribution which they may be called to pay in the average adjustment." The same bill of lading provided that, in case of general average, "the adjustment shall be made at Genoa at the request of" the shipowner. The shipowner is an Italian corporation.

This point has not been stressed in appellant's argument, and there is no evidence before us except the bald language of the bill. It seems to us that under The Queen of the Pacific, 180 U. S. 56, 21 S. Ct. 278, 45 L. Ed. 419, and many cases following thereupon, we are required to pronounce upon the reasonableness of this proviso in the bill of lading. We think it unreasonable, because it attempts to bind shippers to any amount the carrier chooses to exact, and puts their money at the hazard of the owner's solvency. Cf. Colton v. N. Y. & Cuba, etc., Co., 17 F.(2d) ——, 1925 A. M. C. 811.

Decree affirmed, with costs.