## THE FREDENSBRO.

## JOHN KELLY, Limited, v. A/S DET OEVER-SOISKE COMPAGNIE.

No. 63.

District Court, E. D. Pennsylvania.

Oct. 20, 1931.

See, also, 18 F.(2d) 983; 38 F.(2d) 501.

Fraley & Paul, of Philadelphia, Pa., and Single & Single, of New York City, for libelant.

J. Harry LaBrum, of Philadelphia, Pa., T. Catesby Jones, of New York City, William J. Conlen, of Philadelphia, Pa., James W. Ryan, of New York City, and Bigham, Englar, Jones & Houston, of New York City, for respondent.

THOMPSON, Circuit Judge.

John Kelly, Limited, filed its libel against the Danish corporation A/S Det Oeversoiske Compagnie and the S. S. Fredensbro to recover freight money paid under a charter party under which the Fredensbro was to proceed from a port in Sweden to Philadelphia, take on board a cargo of not more than 4,000 and not less than 3,500 tons of coal, and carry it to Belfast, Ireland, where it was to be discharged. The cargo was loaded on board the Fredensbro at Philadelphia on October 27, 1926. The Fredensbro, in proceeding on its voyage, came into collision with

the S. S. Manchester Shipper, and was sunk in the Delaware river. After part of the cargo had been taken out and loaded on lighters, she was raised and towed to the Penrose Ferry Docks, where the remainder of the cargo was discharged. Later the Fredensbro was taken to the Chester Shipbuilding Yards for repairs. The salvaged coal was wet and mixed with mud, slime, silt, and oil. An official survey of the vessel and the coal was made by surveyors acting at the request of the Danish vice consul, and they reported that the cargo was unfit to be carried to Belfast, and recommended that it be sold in the United States.

Correspondence between the attorney for the underwriters of the cargo and the attorneys for the Fredensbro shows that the underwriters, who are suing in the name of the cargo owners, first requested that the cargo be discharged and sold. That proposal was, after considerable discussion, not opposed by the representatives of the vessel. Up to that time no mention of return of freight money was made, but on November 20, 1926, the attorney for the owners and underwriters of the cargo wrote that his clients had no objection to the cargo being sold "if the freight money was returned." There was no agreement by the respondent or its representatives to return the freight money, and, in spite of that fact, the coal was sold at the direction of the cargo owners and underwriters, and the proceeds turned over to the representative of the cargo.

■■■■ The general rule in the United States is that, unless otherwise stipulated, prepaid freight must be returned to the shipper if the goods do not arrive. National Steam Nav. Co. v. International Paper Co. (C. C. A.) 241 F. 861; The Pehr Ugland (D. C.) 271 F. 340; The Kimball, 3 Wall. 37, 18 L. Ed. 50. If, however, the voyage is interrupted by a peril of the sea which necessitates repairs to the vessel, the shipowner has a lien on the cargo for the earning of the freight, and has a right to carry the cargo forward by his vessel or some other conveyance and deliver it and receive his full freight. The shipowner is entitled to a reasonable time within which to repair the vessel. The Nathaniel Hooper, 3 Sumn. 542, Fed. Cas. No. 10,032.

While those rules concerning carriage by sea are not disputed, the libelant claims that the voyage was frustrated because the coal could not be carried without danger of spontaneous combustion, and, in addition, that the shipowner could not and did not repair the vessel within a reasonable time.

■■■ The libelant earnestly contended that the cargo could not have been transported to Belfast because the coal had become susceptible to spontaneous combustion following its alternate wetting and drying and its mixture with foreign substances. In spite of the extended testimony on this subject given by witnesses called by the libelant as experts, there is no convincing evidence that the coal was in such danger of spontaneous combustion as to justify a finding that the voyage was thereby frustrated. The report of the board of surveyors contains no suggestion of danger of spontaneous combustion. This alleged danger apparently did not enter into the consideration of the libelant until after the decision to avoid loss of value by the sale in the United States. There is no evidence to justify a finding that the coal could not have been safely transported if stored with ample provision for ventilation. The court cannot presume that adequate ventilation would not have been provided. It is more than likely that the fact that there was no longer a market for coal abroad after the termination of the British coal strike was the controlling reason in the determination reached by the cargo underwriters to sell the coal in the United States.

■■■ After the sale of the cargo, there was no reason for hastening the repairs to put the ship in condition for carrying it, and we cannot measure the reasonableness of the delay by the time actually consumed in making the repairs. The voyage was broken up by the desire of the libelant to rid itself of the cargo at Philadelphia at a better price than could be obtained abroad if the voyage had been completed. The testimony shows that the ship could have been put into condition to carry the cargo within two or three weeks.

■■■ The libelant has not sustained the burden of proof in showing that it is entitled to a return of the freight money.

### Findings of Fact.

(1) John Kelly, Ltd., the libelant, is a corporation organized and existing under the laws of Great Britain and Ireland.

(2) A/S Det Oeversoiske Compagnie, the respondent, is a corporation organized and existing under the laws of Denmark, and has no office or place of business within the Eastern District of Pennsylvania.

(3) The Fredensbro is a Danish steamship registered at Copenhagen.

856

(4) Prior to December 29, 1926, libelant was the owner of a cargo of 3,972 tons of coal.

(5) On December 29, 1926, libelant assigned all its rights, title, and interest to such coal to the following insurance companies, to wit: The Maritime Insurance Company, Limited; Ulster Maritime Insurance Company, Limited; and Phœnix Assurance Company, Limited.

(6) On September 24, 1926, libelant and respondent entered into a charter party in writing for the carriage of coal from Philadelphia to Belfast, Ireland.

(7) Clause 8 of the charter party provided as follows: "The freight to be paid in cash in London on completion of loading without discount, and not to be returnable if ship lost on passage."

(8) On October 27, 1926, a cargo of 3,972 tons of coal was laden upon the S. S. Fredensbro at Philadelphia.

(9) Freight charges in the sum of £4965 (about $24,162.17) were paid by libelant in London on completion of the loading.

(10) On October 27, 1926, at about 1:05 p. m., the Fredensbro, with the aforementioned cargo of coal on board, was in collision with the Manchester Shipper in the Delaware river in the vicinity of the Greenwich Point Anchorage, and, as a result of the collision, the Fredensbro sank.

(11) Part of the cargo, about 1,200 tons, was taken out of the Fredensbro, while it was still submerged, and was loaded onto lighters.

(12) On December 18, 1926, the Fredensbro was raised with a portion of her cargo aboard.

(13) This coal was mixed with sand, silt, iron, and oil, and was generally broken up and damaged.

(14) At the request of the master of the Fredensbro, a board of survey, consisting of three men, was appointed by the vice consul of Denmark.

(15) On December 15, 1926, the board of survey made a report as follows:

"1. That the cargo must be discharged to permit the vessel to be surveyed and, if possible, repaired.

"2. That the cargo is in very bad condition due to being submerged since the 27th of October, 1926.

"3. That oil, grease, and dirt have become mixed with the cargo.

"4. That the cargo is covered with a layer of mud or silt 6 inches thick.

"5. That the cargo is wet and partially frozen.

"6. That the cargo is unfit to be carried forward to destination.

"7. That it is of very little value.

"8. Our opinion is and we recommend that the cargo being unfit for carrying forward, and of very little value, be disposed of to the best advantage."

(16) The salvaged coal which was on board the Fredensbro was discharged at Philadelphia.

(17) The total of the coal that was salvaged amounted to 3,190 tons.

(18) Work was commenced on January 8, 1927, in discharging the salvaged coal and completed January 15, 1927.

(19) The Fredensbro was drydocked at the Sun Shipbuilding Company yards at Chester on December 23, 1926.

(20) Specifications for repairs and renewals were agreed upon by the owners and underwriters on January 3 to 5, inclusive, 1927.

(21) Some repairs were made to the Fredensbro before the cargo was discharged and the steamer floated on January 6, 1927.

(22) General repairs were made on the Fredensbro during a period commencing January 19, 1927, and terminating April 3, 1927.

(23) The Fredensbro was given a certificate of seaworthiness for the ship and engines on March 31, 1927, by Lloyd Surveyors at Philadelphia.

(24) The Fredensbro did not set sail until April 3, 1927, when she crossed the Atlantic in ballast.

(25) The cargo was delivered January 21, 1927, to the agents designated by the cargo owners.

(26) The cargo owners and their underwriters arranged to sell, and did sell, the salvaged coal in America.

(27) The cargo was sold as coal and in specie on or about January 27, 1927.

(28) A period of three weeks from the time the steamer was raised would have been sufficient to put the Fredensbro's engines in condition to make her seaworthy for a transAtlantic voyage so as to permit transportation of the cargo to Belfast, Ireland.

(29) The master of the Fredensbro was at all times ready to carry the coal to destination.

(30) The voyage was at no time abandoned by the shipowners.

(31) At the time of the loading of the coal on board the Fredensbro, there was a strike at the British coal mines.

(32) The aforesaid strike terminated in November, 1926.

(33) After the termination of the strike, the market for coal in England broke.

### Conclusions of Law.

(1) The libelant has not sustained the cause of action set out in the libel.

(2) The libel should be dismissed.

It is ordered that the libel be dismissed, with costs to the respondent.