## QUEEN OF THE PACIFIC.

CERTIORARI TO THE CIRCUIT COURT OF APPEALS FOR THE NINTH CIRCUIT.

No. 130. Argued and submitted December 14, 1900.—Decided January 7, 1901.

A stipulation in a bill of lading that all claims against a steamship company, or any of the stockholders of the company, for damage to merchandise, must be presented-to the company within thirty days from the date of the bill of lading, applies, though the suit be *in rem*, against the steamship carrying the property covered by the bill of lading.

In the view of the facts that the loss occurred the day after the bill of lading was signed, and the shippers were notified of such loss within three days thereafter, the stipulation was a reasonable one, and a failure to present the claim within the time limited was held a bar to recovery against the company *in personam* or against the ship *in rem.*

The reasonableness of such notice depends upon the length of the voyage, the time at which the loss occurred, and all the other circumstances of the case.

THIS was a joint libel by the Bancroft-Whitney Company, a California corporation, and the firm of Hellman, Haas & Company against the steamship, Queen of the Pacific, owned by the Pacific Coast Steamship Company, to recover damages to certain miscellaneous merchandise shipped April 29, 1888, at San Francisco, to consignees at San Pedro in the State of California.

. The contracts of affreightment were evidenced by bills of lading in the usual form and with the usual exception of perils of the sea, and amongst others with the following stipulation:

"It is expressly agreed that all claims against the P. C. S. S. Co., or any of the stockholders of said company, for damage to or loss of any of the within merchandise, must be presented to the company within thirty days from date hereof; and that after thirty days from date hereof, no action, suit or proceeding, in any court of justice, shall be brought against said P. C. S. S. Co., or any of the stockholders thereof, for any damage to or loss of said merchandise; and the lapse of said thirty days shall be deemed a conclusive bar and release of all right to recover against said company, or any of the stockholders thereof, for any such damage or loss."

The steamship left San Francisco about two o'clock in the afternoon of April 29, 1888, bound for the port of San Diego and intermediate ports, having on board a cargo of general merchandise and upwards of two hundred persons. A little more than twelve hours after she sailed, and about half past two o'clock in the morning of the 30th, the steamer was seen to have sprung a leak and to be taking in water through a watertight compartment known as the starboard alleyway. At this time she had a list of from five to eight degrees to starboard, which, when she reached Port Harford, four or five hours afterwards, had increased to an angle of thirty degrees. When about two hundred and fifty or three hundred yards from the wharf, where she usually made her landing, she took the bottom in about twenty-three feet of water, and in about twenty minutes thereafter filled, sank and lay in a helpless condition for three or four days. A diver, procured for that purpose, after repeated efforts, found the leak and stopped it, whereupon the water was pumped out of the vessel, and she was towed to San Francisco, where she arrived the next day. Her cargo was all discharged upon the wharf, and delivery thereof tendered and accepted by the several owners, who gave the usual average bonds. On May 19, that portion of the cargo belonging to Hellman, Hass & Company was sold by them at public auction. No claim for damage to the merchandise was made

upon the owners of the Queen prior to the sale, nor were they invited to such sale. In short, nothing further appears to have been done for nearly four years, though the steamer was constantly running to and from San Francisco, when on April 28, 1892, this libel was filed. Exceptions to the libel were interposed and overruled, (61 Fed. Rep. 213,) and the case subsequently went to a hearing upon libel, answers and testimony, and resulted in a decree for the libellants for the full amount of their claim, (78 Fed. Rep. 155,) which was affirmed by the Court of Appeals. 94 Fed. Rep. 180. Whereupon this writ of certiorari was granted.

*Mr. Thomas B. Reed* for the Pacific Coast Steamship Company.

*Mr. Milton Andros* for the Bancroft-Whitney Company and others.

MR. JUSTICE BROWN, after making the foregoing statement, delivered the opinion of the court.

The Court of Appeals in its opinion dwelt upon several propositions arising upon the pleadings and evidence, but in the view we have taken of the case we shall find it necessary to discuss but one, which is, in substance, that the libellants did not, as required by the bill of lading, present to the company their claims for damage to the merchandise within thirty days from the date of the bills of lading, April 27 and 28, 1888. There is no pretence of a compliance with this condition. Two answers are made to this defence: First, that the limitation applies only to claims against the steamship company or any of the stockholders of said company, and not to claims against the vessel; second, that the limitation is unreasonable.

1. The first objection is quite too technical. It virtually assumes that there were two contracts, one with the company and one with the ship, the vehicle of transportation owned and employed by the company; and that while the company as to all its other property is protected by the contract, as to this

particular property, used in carrying it out, it is not so protected. But if such be the case with respect to this particular stipulation, must it not also be so with respect to the other stipulations in the bill of lading to which the company is a party but not the ship? Thus, "the responsibility of said company shall cease immediately on the delivery of the said goods from the ship's tackles." Can it be possible that the responsibility of the ship shall not cease at the same time? "The company shall not be held responsible for any damage or loss resulting from fire at sea or in port; accident to or from machinery, boilers or steam," etc.; but shall the company be exempt and not the ship? "It is expressly understood that the said company shall not be liable or accountable for weight, leakage, breakage, shrinkage, rust, etc., . . . nor for loss of specie, bullion, etc., unless shipped under its proper title or name, and extra freight paid thereon;" but shall the ship be liable for all these excepted losses notwithstanding that the company is exonerated? These questions can admit of but one answer. There was in truth but one contract, and that was between the libellants upon the one part, and the company in its individual capacity and as the representative of the ship, upon the other. There is no doubt of the general proposition that restrictions upon the liability of a common carrier, inserted by him in the bill of lading for his own benefit and in language chosen by himself, must be narrowly construed, still they ought not to be wholly frittered away by an adherence to the letter of the contract in obvious disregard of its intent and spirit. It is too clear for argument that it was the intention of the company to require notice to be given of all claims for losses or damage to merchandise entrusted to its care, and as such damage could only come to it while the merchandise was upon one of its steamers or in the process of reception or delivery, and as the owner would have his option to sue either *in rem* or *in personam*, it could never have been contemplated that in the one case he should be obliged to give notice and not in the other. In either event, the money to pay for such damage must come from the treasury of the company; and we ought not to give such an effect to the stipulation as would enable the owner of

the merchandise to avoid its operation by simply changing his form of action. It would be almost as unreasonable to give it this construction as to hold that it should apply if the action were in contract, but should not apply if it were in tort. The "*claim*" is in either case against the company, though the *suit* may be against its property.

2. The question of the reasonableness of the requirement is one largely dependent upon the object of the notice and the length of the voyage. Thus, a notice which would be perfectly reasonable as applied to steamers making daily trips, might be wholly unreasonable as applied to vessels engaged in a foreign trade. Indeed, a thirty-day notice, such as is involved in this case, would be wholly futile as applied to a steamship plying between San Francisco and trans-Pacific ports. Notice might also be deemed reasonable, or otherwise, according to the facts of the particular case. Thus, if the Queen had been driven out to sea and was not heard from for thirty days, obviously the provision would not apply, since its enforcement might wholly destroy the right of recovery. The question is whether under the circumstances of the particular case the requirement be a reasonable one or not.

The Queen was engaged in short trips and in general trade to San Diego, doubtless delivering merchandise in different parcels and in different quantities to large numbers of consignees at the termini, and at intermediate ports. If any damage occurred to such articles, it was of the utmost importance to the company to have the claim made as soon as possible, while the witnesses, who must often be sailors, difficult to find and still more difficult to retain, might be reached, and while their memory was fresh, that the company might then know whether it had a defence to the claim. In case of a disaster occurring on such voyage, it could hardly fail to be known in San Francisco within three or four days from the time the steamer left there. As a matter of fact, the bills of lading in this case were signed April 27 and 28; the loss occurred on April 30, and notice was mailed to the shippers on May 2. There were thus over three weeks during which they were at liberty to make

inquiries, examine into the facts, and determine whether to make claim upon the company or not.

Similar stipulations requiring notices of losses to be given to common carriers, express companies, telegraph and insurance companies have so often been upheld by the courts, when reasonable, that a review of the cases is quite unnecessary. Indeed, this is not the first time that the question has been before this court.

In *Express Co.* v. *Caldwell*, 21 Wall. 264, an agreement by an express company that it should not be liable for any loss of or damage to any package unless claim should be made therefor within ninety days from its delivery to the company, was held to be one which the company could rightfully make, since the time for transit required only about a day. In *Lewis* v. *Great Western Railway Co.*, 5 H. & N. 867, there was a provision in the bill of lading that no claim for damage should be allowed, unless made within three days after the delivery of the goods. This was held to be valid. "The company, wishing to guard against any allegation of neglect in the delivery of goods confided to them, require that when the goods are delivered they shall be promptly examined and complaint at once made if there is occasion for it. Such a condition is perfectly reasonable. The law allows persons to make their own bargains in matters of this sort."

In *Goggin* v. *Kansas Pacific Railway Co.*, 12 Kansas, 416, there was a requirement that claims for damage to live stock should be made in writing, before or at the time the stock was unloaded. Plaintiff alleged that he had signed the bill of lading under protest, and also verbally notified the servants of the company of the damage, before the cattle were unloaded from the cars, and immediately after giving verbal notice, sought for writing materials to make out a written notice, but before he was able to find them, the cattle were unloaded, so that no notice was given. A demurrer was sustained to this reply, the court holding that his inability to procure writing materials was no excuse for not giving notice for more than a year afterward. "The parties were competent to make the contract, and did make it, and it must be held good, unless it is contrary to

public policy." See also *Wolf* v. *Western Union Tel. Co.*, 62 Penn. St. 83.

In *Adams Express Co.* v. *Reagan*, 29 Indiana, 21, where a package was shipped from a town in Indiana to Savannah, Georgia, during the civil war, when transportation was much interrupted, it was held that a condition that the carrier should not be liable unless a claim was presented within thirty days after shipment was unreasonable. It was put upon the ground that the country, being in an unsettled condition, occasioning great delays in shipments and in the transmission of mails, an attempt to incorporate this condition into their contract was placing it within the power of the company by a delay, which under the circumstances would, perhaps, not have been unreasonable, to prevent any claim for loss or damage, however gross may have been its negligence. It appeared that the plaintiff's agent delayed shipping the property for a month or more until Savannah was taken by the Federal troops, when he delivered it to the company and the receipt was executed. That the case was determined upon the particular facts is evident from the subsequent case of *United States Express Co.* v. *Harris*, 51 Indiana, 127, in which a stipulation that the company was not to be liable for any loss, unless the claim therefor should be made in writing, at the office of shipment, within thirty days from the date of said receipt, was held to be binding and valid, though it was doubted whether the claim must be made at the office of the company, where the property had passed into the hands of another carrier, or might be made in such case upon some agent or officer chargeable with the loss. The former case was distinguished as being applicable to its own facts.

There are doubtless some cases to the contrary, where upon the particular facts the condition was held to be unreasonable. In *Missouri Pacific Railway Co.* v. *Harris*, 67 Texas, 166, the requirement was that the shipper should give notice in writing of his claim to some officer of the company, or its nearest station agent, before the cattle were removed from their place of destination, and before they were mingled with other stock. The shipment was from an interior town in Texas to Chicago, the line of railway did not extend to the point of destination,

and both parties understood that the carrier would transport the cattle from its own road over a connecting road. It was held that the failure of the answer to show that the carrier had an officer or agent so situated that the contract to give notice to such officer or agent was reasonable, was fatal on demurrer, and that no presumption could be indulged that the carrier had an officer near the place of destination. This case was evidently decided upon its special facts. In another case decided by the Supreme Court of Texas, *Pacific Express Co.* v. *Darnell*, 6 S. W. Rep. 765, a piece of machinery was delivered to an express company in Texas for shipment to Baltimore. The contract of shipment provided that the company should not be held liable for any claim arising from the contract, unless it were presented within sixty days of the date of the contract. Held, that the failure to present the claim was not a bar to the right of recovery, the restriction of presentment of claims without reference to the time of loss being unreasonable. The court seemed to assume that the stipulation imposed a restriction which in many cases would deny a right of action, and thereby permit the carrier to contract against his negligence, which is never allowed. The opinion seems to have gone off upon the point that, while the notice as applied to the facts might have been reasonable, it would be unreasonable when applied to a different state of facts. It is unnecessary to say that if, under the circumstances of a particular case, the stipulation were unreasonable, or worked a manifest injustice to the libellants, we should not give it effect. All that was decided in *Westcott* v. *Fargo*, 61 N. Y. 542, was that a similar limitation of thirty days was pleaded as a condition precedent to the plaintiff's right to recover, when it should have been set up in the answer. See also *Southern Express Co.* v. *Caperton*, 44 Alabama, 101.

Other analogous limitations upon the common-law liability of a carrier, not operating to restrict his liability for negligence, have been sustained by this court, viz., exempting the carrier from liability from losses by fire occasioned without his negligence, *York Company* v. *Central Railroad*, 3 Wall. 107; *Bank of Kentucky* v. *Adams Exp. Co.*, 93 U. S. 174; a restriction in value upon the property shipped; *Railroad Co.* v. *Fraloff*, 100

U. S. 24; *Hart* v. *Penn. Railroad Co.*, 112 U. S. 331; limiting its liability upon through shipments to losses occurring upon its own line, *Railroad Co.* v. *Pratt*, 22 Wall. 123; and providing that in the case of loss the carrier shall have the full benefit of any insurance that may be effected upon the goods, *Phœnix Ins. Co.* v. *Erie & Western Transportation Co.*, 117 U. S. 312. Indeed, in *Railroad Co.* v. *Lockwood*, 17 Wall. 357, in an elaborate opinion by Mr. Justice Bradley, it was held by this court that common carriers may impose almost any just and reasonable limitation upon their common-law liability, not amounting to an exemption from the consequences of their own negligence. The methods of transportation have changed so radically during the century which has just closed, that it seems almost necessary to the proper protection of a carrier, in transacting the enormous business of railway and steamship lines, that he should have the power by just and reasonable limitations incorporated in his contract, or brought to the attention of his shippers, to place some restrictions upon the unlimited liability of the common law, particularly where articles of great value, such as jewels, money, bullion, laces and precious stones, are transported without disclosing their contents, or articles or animals of exceptional value, such as race horses, are carried without information of their character; and that persons intending to make claims for losses should manifest their election to do so as soon as the circumstances can by reasonable diligence be ascertained. The law recognizes the fact that the measure of liability originally applied to a carter's wain or a waterman's hoy may often be illy adapted to the exigencies of modern commerce.

There is no hardship to the libellants in giving effect to the stipulation in this case. As was said of a similar condition in *Express Co.* v. *Caldwell*, 21 Wall. 264, 268: " It contravenes no public policy. It excuses no negligence. It is perfectly consistent with holding the carrier to the fullest measure of good faith, of diligence and of capacity, which the strictest rules of the common law ever required, and it is intrinsically just, as applied to the present case." The loss was known to the shippers within three days after it occurred. The steamer was then and continued to be in port, and the facts were easily ascer-

tainable. Under the stipulation the company had a right to assume that the proper inquiries had been made, and that the shippers were either satisfied that the company was not liable, or that they had elected to rely upon their policies of insurance. Instead of giving notice libellants permitted four years to elapse before beginning suit, although both the ship and the company were readily accessible. True, the Court of Appeals found there was no change of circumstances and no loss of testimony in the mean time; but that is not material. The question concerns the binding effect of the stipulation. Had the ship been transferred to a *bona fide* purchaser there certainly would have been, had the witnesses whose testimony could explain the loss have disappeared, there probably would have been, laches, which would render the claim stale, irrespective of the stipulation; but the stipulation itself would be invalid only upon showing that under the circumstances of the particular case its enforcement would work a manifest injustice. In this view it is unnecessary to consider whether the limitation of thirty days for the commencement of suit be reasonable or not.

We are of opinion that the clause in question was perfectly reasonable, and the decree of the Court of Appeals must therefore be

*Reversed, and the case remanded to the District Court for the Northern District of California with directions to dismiss the libel.*